UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

THE LAW OFFICE OF ROBERT B. WOODRUFF, P.C.
60 Washington Street, Suite 100
Morristown, NJ 07960
(973) 539-2600
Attorneys for Plaintiff
RBW 0245

| | |
|---|---|
| JAMES BAYLISS, <br><br> Plaintiff, <br><br> v. <br><br> NEW JERSEY STATE POLICE, TROOPER RICHARD J. WAMBOLD, JR. individually and in his capacity as a member of the New Jersey State Police; TROOPER KEITH JUCKETT, individually and in his capacity as a member of the New Jersey State Police; JOHN DOES (1-10) individually and in their official capacities with various Law Enforcement Agencies, RICHARD ROES (1-10) individually and in their official capacities with various Law Enforcement Agencies <br><br> Defendants. | CIVIL ACTION NO.: 11-0890 (MLC-LHG) <br><br> THIRD AMENDED COMPLAINT & JURY DEMAND |

## JURISDICTION

1. Jurisdiction is founded on 42 U.S.C. §§ 1983 and 1985; 18 U.S.C. 1962(b); the Fourth and Fourteenth Amendments of the United States Constitution; and on 28 U.S.C. §§ 1331 and 1343 (3).

2. Jurisdiction lies over state law claims set forth herein based on the principles of supplemental jurisdiction, as codified at 28 U.S.C. § 1367.

3. The amount in controversy exclusive of interest and costs exceeds the sum of One Hundred Thousand ($100,000.00) Dollars.

## PARTIES

4. Plaintiff, James Bayliss is a resident of Warren County and a citizen of the United States of America.

5. Defendant New Jersey State Police (hereinafter "NJSP") is a law enforcement agency under the auspices of the State of New Jersey. It is obligated to oversee officers whose duties include protecting and serving the citizens of the State of New Jersey. The NJSP is responsible for properly hiring, training, supervising and controlling said officers in the exercise of their duties and responsibilities.

6. Richard J. Wambold, Jr., at all times relevant herein was employed as a State Trooper by Defendant NJSP. As such, he is charged with the obligation and responsibility to protect the citizens of the State of New Jersey and to abide by the laws of the State of New Jersey and those of the United States in the lawful exercise of his duties. He is sued individually and in his capacity as a State Trooper.

7. Keith Juckett at all times relevant herein was employed as a State Trooper by Defendant NJSP. As such, he is charged with the obligation and responsibility to protect the citizens of the State of New Jersey and to abide by the laws of the State of New Jersey and those of the United States in the lawful exercise of his duties. He is sued individually and in his capacity as a State Trooper.

8. John Does (1-10) at all times relevant herein were employed as State Troopers by Defendant NJSP. As such, they are charged with the obligation and responsibility to protect the citizens of the State of New Jersey and to abide by the laws of the State of New Jersey and those of the

United States in the lawful exercise of their duties. They are sued individually and in their official capacities.

9. Richard Roes (1-10) at all times relevant herein were employees of the NJSP assigned to the Division of Internal Affairs and/or authorized to make decisions regards the discipline of Officers and/or were persons authorized to accept the findings of Internal Affairs' investigations.

10. All Defendants referenced herein acted under Color of Law.

## FACTS COMMON TO ALL COUNTS

11. Plaintiff James Bayliss was involved in an automobile accident in or about September 2005. Same caused numerous injuries including Traumatic Brain Injury ("TBI").

12. On or about May 16, 2009 Plaintiff James Bayliss was a passenger in his own motor vehicle while it was parked in a driveway on Jackson Valley Road in the Township of Mansfield, County of Warren.

13. Plaintiff's vehicle was approached by numerous State Troopers (John Does) and members of other law enforcement agencies (John Does), including Defendants Wambold and Juckett, most of whom were in the area due to a motor vehicle accident at a nearby intersection and/or pursuant to a criminal investigation.

14. The driver of Plaintiff's vehicle was instructed to exit the vehicle and to submit to field sobriety tests which he was ultimately deemed to have passed. Although there was no probable cause to arrest the driver for driving under the influence, the driver was arrested.

15. Plaintiff was then asked to exit the vehicle whereupon a search of his person was conducted by Defendant Wambold.

16. During this time the State Troopers were advised by the driver of Plaintiff's vehicle that Plaintiff had previously been in a serious car accident and had suffered severe trauma including an inability to process information and to provide prompt verbal responses.

3

17. Plaintiff exited the vehicle and complied with Defendant Wambold's requests.

18. Shortly thereafter Defendant Wambold did, absent any justification, violently throw Plaintiff to the ground, jump on the Plaintiff and repeatedly pummel Plaintiff in the face with his fists.

19. Incredibly John Does' (1-10) and Defendant Juckett joined Defendant Wambold in striking and kicking the Plaintiff while he was on the ground.

20. After the beating, Defendant Wambold and Defendant Juckett picked up the Plaintiff and took him into a police vehicle. En route to said vehicle, Plaintiff was deliberately walked headfirst into the right front bumper/fender area of the police vehicle.

21. Plaintiff was then thrown into said vehicle and further assaulted. He was taken into custody and charged with Obstruction of Justice and Resisting Arrest.

22. On October 18th, 2011 the Honorable Edward J. Palmer, Judge of the Washington Township Municipal Court (Warren County) did dismiss all charges against Plaintiff, with prejudice.

## FIRST CAUSE OF ACTION

23. Defendants Wambold, Juckett's and Defendant John Does 1-10 conduct in the use of excessive force did violate Plaintiff's rights and did deprive him of substantive due process and equal protection as well as the privileges and immunities secured by the Constitution of the State of New Jersey pursuant to N.J.S.A. 10:6 and the Constitution of the United States per 42 USC § 1983 et seq.

24. Further, Defendants' conduct did result in the unlawful arrest of Plaintiff together with Plaintiff being unlawfully imprisoned, all of which did violate Plaintiff's rights and deprive him of substantive due process and equal protection and the privileges and immunities of the Constitution of the State of New Jersey and the Constitution of the United States.

25. In addition, Juckett and John Does (1-10) did violate Plaintiff's rights as set forth above in their failure to stop Defendant Wambold from exercising excessive force and by also striking Plaintiff or otherwise causing him injury due to the application of excessive force.

26. The above-cited actions are a violation of N.J.S.A. 10:6 "The New Jersey Civil Rights Act" and Defendants should be deemed liable thereunder for all claims/violations set forth in this Complaint.

WHEREFORE, Plaintiff demands judgment against all Defendants jointly and severally or in the alternative for the following damages:

    a). Compensatory damages;

    b). Punitive damages;

    c). Attorneys' fees and costs of suit pursuant to 42 U.S.C. § 1983 et seq. And that which is provided under the Constitution of the State of New Jersey per N.J.S.A. 10:6-2f;

    d). Such other relief as the Court may deem appropriate.

## SECOND CAUSE OF ACTION

27. Plaintiff repeats all of the above as if set forth at length herein.

28. At all times relevant hereto individually named Defendant Troopers and John Does 1-10 and Richard Roes 1-10 did act under color of law.

29. Defendant NJSP, pursuant to the actions of authorized individuals, to wit, members of the NJSP Office of Internal Affairs, did conduct an investigation of the events of May 16, 2009 following complaints lodged by Plaintiff James Bayliss and his father John Bayliss.

30. Over the course of approximately three (3) years, John Bayliss, the Plaintiff's father, made repeated inquiries into the status of the investigation into the Officers who assaulted his son.

31. Said "investigation" took over three (3) years to complete, well in excess of the NJSP policy to complete investigations within one hundred twenty (120) days.

32. During various levels of the investigation process, Defendant Wambold's conduct was found to have not violated the NJSP policy guidelines on the use of force. Rather, such conduct was ratified by the NJSP, as is described more fully below.

33. More specific to such ratification was the finding of NJSP Lieutenant Leonard L. Hoffman issued on our about November 11, 2010. Lt. Hoffman conducted the administrative investigation on behalf of the NJSP. Therein, on reasonable belief Plaintiff asserts that Lieutenant Hoffman found as follows:

   a). Given the reasonable belief (facts and circumstances), including the reasonable inferences drawn therefrom, known to Trp. Wambold at the time and the split-second decision he had to make regarding the threatening actions of Mr. Bayliss and after reviewing all reports, MVR's, and eyewitness statements, the preponderance of the evidence shows that **Unreasonable Use of Force was not used** and this allegation is **Unfounded** against **Sgt. Wambold.** (emphasis in original and supplied).

   b). The MVR depicts Mr. Bayliss continually disregarding the lawful commands of Sgt. Wambold. I have reviewed and concur with the analysis found in the Warren County Prosecutor's Report in which Lt. Emery writes: "Wambold can be heard directing suspect (Mr. Bayliss) to spread his right leg out. Tpr. Inskeep is likewise heard repeating the command to the passenger to keep his leg out. Sgt. Wambold uses his foot to move the suspect's foot more to the right. The suspect is then observed moving his right leg back to the left. The suspect comments (indiscernible) and then moves his left hand off the car and looks over his left shoulder. It appears that the suspect's back moves forward Sgt. Wambold's body. It is not clear and/or it cannot be visibly seen what occurs due to Sgt. Wambold's body partially shielding the suspect Sgt. Wambold then is observed to grab the suspect and throw him to the ground. Bayliss lands on his back and raises his arms upward toward Sgt. Wambold. Sgt. Wambold is then observed punching the suspect in what appears to be the area of the face." (emphasis in original)

   c). Mr. Bayliss and his companion, Timothy Snyder, both provided statements that were inconsistent with the facts (MVR) of the case. Due to Mr. Bayliss's intoxicated state and disability (which was not known to Sgt. Wambold at the time of this incident) it can be concluded his lack of co-operation and disregard of Sgt. Wambold's commands led to him being thrown to the ground. It is also probable that Sgt. Wambold expected that he needed more force when handling Bayliss and it was Bayliss' intoxication and disability that made his unsteadiness a factor as too (sic) why the amount of force used by Sgt. Wambold may have at first seemed unjustified.

34. Lieutenant Hoffman relied upon, referenced or otherwise adopted the investigative findings of Detective First Class DeFusco who determined, as summarized by Hoffman;

   The evidence revealed the troopers had to carry Mr. Bayliss to the troop car because of his noncompliance. At one point, Mr. Bayliss' body went limp and he fell to his knees. Tpr. Juckett stated, as they approached the troop car SSGT Wambold struck the front of the car with his leg and Mr. Bayliss' body never made contact with the troop car. In a review conducted by DAG Dermott O'Grady, he found that insufficient evidence existed to initiate a criminal investigation.

6

35. In addition, a representative of the NJSP, Deputy Attorney General Engallena, Counsel for Defendant Wambold, in further evidence of the acceptance, support and/or ratification of Defendant Wambold's conduct by the NJSP and the Office of the Attorney General did state, upon reasonable belief as follows:

   I have reviewed the MVR and do not see anything shocking or unreasonable. Suspected burglary tools and drug paraphernalia were observed, plaintiff was not responsive to questioning, and after ordered out of the vehicle made a sudden, violent movement. He was taken down smoothly, hit once or twice, then dogpiled. It appears his head may have accidentally struck the cruiser while troopers carried him to the vehicle, but not intentionally as he now claims.

36. Engellena further noted in ratification and support of Wambold's conduct:

   "If you have any questions or concerns, please do not hesitate to contact me. I will be happy to speak with you, and look forward to vigorously defending you in this action."

37. Further, the "investigation" took into account and did otherwise consider that the Warren County Prosecutor's Office investigated the incident and determined no basis for the filing of criminal charges against Defendant Wambold.

38. In addition, on information and belief, the Superintendent of the NJSP, on or about May 11, 2010, received the report from Internal Affairs regarding the Bayliss investigation, yet no charges were filed.

39. Shortly before June 1, 2012, a representative of the NJSP did receive a telephone call from a Star Ledger newspaper reporter, advising that an article would run on Sunday, June 3rd setting forth the incident involving Plaintiff James Bayliss and the fact that the investigation had been ongoing over three (3) years without any official finding.

40. On or about June 1, 2012, an NJSP representative advised said reporter that the NJSP was going to file administrative charges against Troopers Wambold and Juckett. Only after being prompted by the fear of bad publicity did the Defendant, NJSP determine to take action.

41. For three years Defendant NJSP and its authorized agents (John Roes 1-10) failed to take action or otherwise object to or repudiate the conduct of the individual Defendants named

herein, and therefore through such action and inaction did ratify the conduct of said Defendants.

42. Such ratification is further exemplified by Defendant NJSP's continuing failure until June 1, 2012 to terminate, demote or otherwise take any meaningful disciplinary action against the individual Defendants for their conduct as set forth herein.

43. The call to the NSP by the Start Ledger reporter in no way altered the material facts available to these Defendants regarding the incident. Indeed, prior to receiving this call these Defendants had all of the information necessary to render a determination as to whether Defendants Wambold and Juckett engaged in conduct meriting reprehension, including but not limited to Trooper Wambold's report and two videos taken from NJSP vehicles which specifically and plainly exhibit the conduct of Wambold and Juckett.

44. Such ratification is further amplified by the NJSP's failure to interview the owner of the very property on which the incident occurred, which individual observed the entire event. Such failure is further indicative of a predisposition not to take appropriate investigative steps and therefore avoid taking or having to take actions against the individual Defendants.

45. Said ratification by NJSP operates to render the NJSP as responsible for the individual Defendants' conduct

46. Said conduct deprived the Plaintiff of his Constitutional rights secured by the 4th and 14th amendments to the U.S. Constitution per 42 USC *§ 1983* et seq. and the Constitution of the State of New Jersey, *N.J.S.A. 10:6 et seq.*

WHEREFORE, Plaintiff demands judgment as against all Defendants, jointly and severally, or in the alternative for the following damages:

    a). Compensatory damages;

    b). Punitive damages;

8

      c). Attorney's fees and costs of suit pursuant to 42 U.S.C.1983 et seq. and N.J.S.A. 10:6-2f;

      d). Such other relief as the Court may deem appropriate.

### THIRD CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

47. Plaintiff repeats all of the above as if set forth at length herein.

48. Defendants' actions, as set forth at length herein, were so severe and pervasive as to cause the Plaintiff to suffer emotional distress.

WHEREFORE, Plaintiff demands judgment as against all Defendants, jointly and severally, or in the alternative for the following damages:

      a). Compensatory damages;

      b). Punitive damages;

      c). Attorney's fees and costs of suit as set forth in the respective statutes noted herein;

      d). Such other relief as the Court may deem appropriate.

### JURY DEMAND

Plaintiff demands a trial by jury on all issues of the within Complaint.

### DESIGNATION OF TRIAL COUNSEL

Plaintiff, James Bayliss hereby designates Robert B. Woodruff as trial counsel in the above matter.

THE LAW OFFICE OF
ROBERT B. WOODRUFF, P.C.
Attorneys for Plaintiff

*[signature]*
ROBERT B. WOODRUFF
RBW 0245

Dated: