# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JAMES BAYLISS,** | Civil Action No. 11-890 (MLC)(LHG) |
| Plaintiff, | |
| v. | **OPINION AND ORDER** |
| **NEW JERSEY STATE POLICE, et al.,** | |
| Defendants. | |

**THIS MATTER** comes before the Court by motion filed by the New Jersey State Police (the "State" or the "NJSP") on March 8, 2013 [Docket Entry No. 75], seeking an Order compelling the return of documents inadvertently produced, and an identification of all those to whom the documents at issue were disseminated (the "Clawback Motion"). The Clawback Motion is opposed by Defendant Trooper R. Wambold ("Wambold"). [Docket Entry No. 83] (the "Wambold Brief"). The Court has considered the motion on the submissions without oral argument, pursuant to Fed. R. Civ. P. 78. For the following reasons, the motion is GRANTED.

## I. BACKGROUND

This case has a somewhat tortured procedural history. For purposes of this Order, the Court presumes familiarity with the background and therefore limits the discussion to that necessary for an understanding of the issues.

Plaintiff James Bayliss ("Bayliss" or "Plaintiff") filed suit in the Superior Court of New Jersey on or about January 14, 2011, naming as defendants the NJSP, Wambold and Trooper Juckett ("Juckett"). Defendants removed the case to Federal Court on February 17, 2011. [Docket Entry No. 1]. After a period in which Plaintiff amended the complaint twice and the

1

case was stayed for several months in light of then-ongoing criminal proceedings, an initial scheduling conference was conducted on March 29, 2012. The parties then commenced discovery.

At a status conference conducted on October 24, 2012, the issue currently before the Court was first raised. Specifically, the parties addressed a proposed amended pleading that counsel for Wambold had circulated at the Court's instruction, to determine whether there was consent for the amendment. During the call, the NJSP raised the fact that the proposed amended pleading contained references and quotes from confidential documents that it had not produced, referred to as the State Police Review Sheets (the "Review Sheets"). There was discussion as to how the documents had come into the possession of Wambold's counsel. The undersigned instructed counsel to have further discussion on the issue in an effort to reach a resolution with regard to the use or return of those documents. In the interim, the parties were instructed not to further disseminate the documents at issue.

On November 7, 2012, Bayliss filed the Third Amended Complaint. [Docket Entry No. 48]. Shortly thereafter, the Court conducted a status conference on November 19, 2012. Because the Third Amended Complaint appeared to contain information from the Review Sheets, as quoted in the proposed amendment Wambold's counsel had circulated earlier, the Third Amended Complaint was placed under temporary seal. [Docket Entry No. 54]. In the Order dated November 27, 2012, counsel were instructed to "meet and confer regarding the confidentiality issues arising from the amended answer and determine how to address these issues prior to the amended answer being electronically filed." *Id.*

On December 5, 2012, Wambold filed a Motion for Leave to File a Third Amended Answer, Counter-Claims, Cross-Claims & Third Party Complaint (the "Motion to Amend").

[Docket Entry No. 59]. The other Defendants have opposed the motion to amend, on various grounds, including that the amendment should not be allowed under the *Younger* abstention doctrine, given that the claims sought to be added are the subject of pending state proceedings. [Docket Entry No. 82].

After the Motion to Amend had been filed, the parties notified the Court that they had agreed to mediation with retired Superior Court Judge John E. Keefe in an effort to resolve the many outstanding issues in the case. They requested that the *status quo* be maintained while they explored settlement. [Docket Entry No. 62]. When mediation proved unsuccessful, the Court conducted an in-person status conference on February 13, 2013, at which time the Court set a schedule for the filing of the present motion for the return of documents by no later than March 8, 2013.

The Clawback Motion was then timely filed on March 8, 2013. [Docket Entry No. 75]. Wambold filed opposition on April 1, 2013. [Docket Entry Nos. 83, 84, 85]. Soon thereafter, the parties advised the undersigned that they were again engaging in the mediation process, and the Clawback Motion, along with Wambold's Motion to Amend, were put on hold.

On August 22, 2013, the Court conducted another status conference, during which counsel advised that Bayliss had reached a settlement with all Defendants. Wambold had not, however, settled the claims he had raised against the State. The parties discussed the impact of the settlement on the issues pending in this matter, including whether this Court has jurisdiction over any remaining issues, particularly those raised in the Motion to Amend. The Motion to Amend was terminated and is to be the subject of further briefing if Wambold intends to pursue that motion; otherwise those claims will proceed in state court, where separate actions in which

3

the same claims have been asserted are already pending. In the interim, the State has indicated that it still seeks to have a decision from this Court on the Clawback Motion.

## II. LEGAL STANDARD

The issue before the Court is whether the Review Sheets must be returned to the State based upon an inadvertent production of documents protected by the deliberative process privilege. Fed. R. Civ. P. 26(b)(5)(B) provides in relevant part:

> *Information Produced.* If information produced in discovery is subject to a claim of privilege . . . the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The producing party must preserve the information until the claim is resolved.

In determining whether documents that have been inadvertently produced must be returned, courts utilize a two-step process: first, the court must determine whether the documents at issue are in fact privileged. *See Peterson v. Bernardi*, 262 F.R.D. 424, 427 (D.N.J. 2009). If the documents are found to be privileged, the court must then decide whether the producing party waived that privilege. *Id.*

Fed. R. Evid. 502 (b) governs such waiver in a federal proceeding if the documents are the subject of the attorney-client privilege or work product doctrine. The rule does not, however, specifically reference the deliberative process privilege. At least one other federal court has, nevertheless, looked to Rule 502 for guidance in determining the standard for the return of inadvertently produced documents protected by the deliberative process privilege. *Sikorsky*

4

*Aircraft Corp. v. United States*, 106 Fed. Cl. 571, 582-583. (Fed. Cl. 2012) (quoting *Tigue* v. *United States Dep't of Justice*, 312 F.3d 70, 76 (2d Cir. 2002) (noting that the deliberative process privilege is a "sub-species of work-product privilege")). Because clear parallels exist between the policies sought to be fostered by the qualified privileges afforded attorney work-product and the deliberative process, this Court will also look to Rule 502 for guidance.

Under Rule 502, once it has been established that the documents at issue are privileged, the party seeking their return must satisfy the three prongs of Rule 502(b) to avoid a waiver: (1) the disclosure was in fact inadvertent; (2) the party took reasonable steps to protect the confidential information from disclosure; and (3) once the disclosure took place, the holder of the privilege acted promptly to secure the return of the documents.

In this case, the threshold issue of whether the documents at issue are confidential depends upon the application of the deliberative process privilege. The deliberative process privilege is the most frequently invoked form of executive privilege. *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997). The purpose of the privilege is to protect the quality of government decisionmaking by "prevent[ing] injury to the quality of agency decisions which could result from premature or indiscriminate disclosure" of "deliberations comprising part of a process by which government decisions and policies are formulated." *Resident Advisory Board v. Rizzo*, 97 F.R.D. 749, 751 (E.D.Pa. 1983); *see also National Labor Relations Board v. Sears, Roebuck & Co. ("NLRB")*, 421 U.S. 132, 150 (1975); *Conoco Inc. v. United States Dep't of Justice*, 687 F.2d 724, 727 (3d Cir. 1982). The privilege recognizes "that were agencies forced to operate in a fishbowl, the frank exchange of ideas and opinions would cease and the quality of administrative decisions would consequently suffer." *First Eastern Corp. v. Mainwaring*, 21 F.3d 465, 468 (D.C. Cir. 1994) (quotations and internal ellipses omitted).

5

That said, "the deliberative process privilege, like other executive privileges, should be narrowly construed." *Redland Soccer Club, Inc. v. Dep't of Army of U.S.*, 55 F.3d 827, 856 (3d Cir. 1995) (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980)). Because the privilege does not protect all communications made by government officials, the court must initially determine whether the material the government seeks to protect comprises part of a process by which a government agency formed a decision or policy. *NLRB*, 421 U.S. at 150. The initial burden of establishing whether the deliberative process privilege applies is on the government. *Redland*, 55 F.3d at 854.

Accordingly, in the first instance, the court must determine whether the government has established a *prima facie* case that the deliberative process privilege applies. *United States v. Ernstoff*, 183 F.R.D. 148, 152 (D.N.J. 1998) To do so, the government must initially show that the material sought to be protected is pre-decisional and deliberative. *Abdelfattah v. United States Dep't of Homeland Sec.*, 488 F.3d 178, 183 (3d Cir. 2007). In order to be pre-decisional, the document in question "must concern an anticipated agency decision and have been generated prior to the actual decision being reached; it cannot involve a communication concerning the decision made after the decision has already been adopted." *United States v. Pechiney Plastics Packaging, Inc.*, No. 09-5692, 2013 WL 1163514, at *13 (D.N.J. March 19, 2013). Further, to be deliberative, a document must reflect "advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *NLRB*, 421 U.S. at 151- 52. In other words, the material must "reflect[] the give and take of the consultative process." *New Jersey v. RPI Energy Mid-Atlantic Power Holdings, LLC,* No. 07-5298, 2013 WL 272763, at *1 (E.D.Pa. Jan. 24, 2013) (citing *Rizzo,* 97 F.R.D. at 753). In addition, to the extent that the documents reflect "personal opinions of the writer rather than the

6

policy of the agency," such documents are protected by the privilege since disclosure "would inaccurately reflect or prematurely disclose the views of the agency, suggesting as agency position that which is as yet only a personal position." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).

Because the privilege extends only to deliberative documents, it does not typically apply to documents reflecting "compiled factual material or purely factual material contained in deliberative memoranda and severable from its context." *Environmental Protection Agency v. Mink*, 410 U.S. 73, 88 (1973). However, "factual information that itself reveals the deliberative process and cannot be severed from the deliberative context is protected.*" In re U.S.*, 321 Fed. Appx. 953, 959 (Fed. Cir. 2009). In deciding whether certain material is deliberative, "[c]ourts focus less on the nature of the materials sought and more on the effect of the materials' release: the key question in [such] cases became whether the disclosure of materials would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." *Id*. (quoting *Dudman Commc'ns v. Dep't of the Air Force*, 815 F.2d 1565, 1568 (D.C. Cir.1987)).

Once the government satisfies these threshold requirements, the deliberative process privilege is applicable. The court's inquiry, however, does not end there because the privilege is not absolute. *Redland*, 55 F.3d at 854. Instead, once the agency demonstrates that the privilege applies, the party seeking discovery has the opportunity to make a showing of sufficient need for the otherwise privileged material. *Rizzo*, 97 F.R.D. at 753. In that regard, the court must balance the need for the documents against the reasons for confidentiality asserted by the government. In conducting this balancing test, a court should consider: (1) the relevance of the evidence sought; (2) the availability of other evidence; (3) the seriousness of the litigation and issues involved; (4)

7

the role of the government in the litigation; and (5) the potential for inhibited candor by government employees resulting from such disclosure. *Redland*, 55 F.3d at 854.

### III. ANALYSIS

#### A. Whether the Documents at Issue Are Privileged

##### i. Whether the Deliberative Process Privilege Applies to the Review Sheets: The State's *Prima Facie* Case

The State contends that the Review Sheets are subject to the protections of the deliberative process privilege. In so arguing, the State relies in large part on the Certification of Major David C. Jones (the "Jones Cert."), the Commanding Officer of the NJSP Office of Professional Standards (the "OPS"). [Docket Entry No. 75-2]. In his Certification, Major Jones sets forth in detail the process by which the OPS conducts internal investigations of alleged misconduct. As Major Jones explains, an investigation into alleged misconduct by a trooper is performed by an investigating officer. Jones Cert. ¶3. The investigating officer prepares a summary of the allegations and the conclusions reached. *Id.* The investigating officer's completed investigation, the summary of that investigation, and the Review Sheets are forwarded through the OPS chain of command for their independent review by supervising members of Major Jones's command staff. *Id.* The supervising command staff members do not conduct their own independent factual investigations. *Id.* Instead, the command staff members complete the Review Sheets, offering their opinions on the investigation. *Id.* After receipt of the investigation, the summary, and the completed Review Sheets, Major Jones formulates a recommendation for the Superintendent of the New Jersey State Police. *Id.* The Superintendent renders a decision with respect to proposed disciplinary action. *Id.*

8

Major Jones asserts that he "rel[ies] heavily upon the candid evaluations of [his] staff before submitting [his] recommendation to the Superintendent." Jones Cert. ¶4. Disclosure of Review Sheets "would necessarily have a chilling effect on the candor of the reviewing officers," insofar as "an officer might be unwilling to share a 'gut feeling' or some other misgiving, if he knows he might be called upon to justify [it] in a deposition or trial." Jones Cert. ¶¶5-6. Major Jones avers that "deny[ing] the Superintendent the free flow of advice from his experienced supervisory personnel undermines the public interest, would unreasonably and unnecessarily restrict the orderly functioning of the NJSP and negatively affect the administration of the trooper disciplinary system." Jones Cert. ¶6. Major Jones also asserts that the disclosure of the Review Sheets in this case is being investigated by OPS and that it was contrary to the rules and regulations of the NJSP, which prohibit unauthorized disclosure or dissemination of non-public information received or acquired by virtue of members' official duties. Jones Cert. ¶¶8-9. Indeed, such disclosure is a disciplinary offense. *Id.*

The State has asserted, through Major Jones as the head of OPS, a formal claim of privilege over a specific group of documents: the Review Sheets prepared within that department as part of the investigation into Wambold's alleged use of excessive force with respect to Plaintiff. Major Jones's Certification has also set forth a harm to the public interest—a chilling of the candor he relies upon from his reviewing officers and the subsequent deprivation of advice to the Superintendent—that would occur should the Review Sheets not be returned.

The State also argues that the Review Sheets are both pre-decisional and deliberative. With respect to the pre-decisional prong, the State has shown that the Review Sheets are prepared by senior members of OPS command staff and forwarded to the head of OPS for consideration prior to his recommendation to the Superintendent. With respect to the

deliberative prong, the State has likewise shown that the Review Sheets consist of commentary provided by individual OPS command staff members to assist the head of OPS in his efforts to advise the Superintendent. The contents of the Review Sheets therefore seem to fall squarely within the sort of interior, advisory communications contemplated by the deliberative process privilege case law.

Wambold argues in the first instance that the Review Sheets cannot be privileged because the State actually agreed to represent Wambold in defense of the action brought by Bayliss. Wambold Brief at p. 7. Essentially, Wambold contends that the Review Sheets are part of the State's file with regard to that representation and therefore should have been turned over to new counsel when the State withdrew from representation.

Wambold further contends that the Review Sheets are neither pre-decisional nor deliberative. *Id*. at pp. 8-9. He points out that the Review Sheets were dated before the first NJSP decision, in which it was decided to defend and indemnify Wambold, but that the NJSP later changed its mind, finding that Wambold had in fact engaged in the use of excessive force. Wambold Brief at p. 9. Thus, Wambold contends, there were two final decisions made by the NJSP. *Id*.

As a preliminary matter, the Court finds it is reasonable to expect that making the Review Sheets public would discourage OPS command staff members from offering their candid assessment of future cases, to the detriment of its investigations. Furthermore, the Court finds that a distinction must be drawn between the State's role in investigating the allegations of wrongdoing, which was done by the NJSP OPS, and the prior representation of Wambold by the New Jersey Office of the Attorney General. That the Attorney General's office once represented

10

Wambold in this matter does not mean that otherwise confidential documents of the NJSP OPS are no longer privileged and must be turned over.

In addition, insofar as the Review Sheets precede both the OPS recommendation and the Superintendent's decision, the Review Sheets are pre-decisional. The fact that the NJSP changed its position with regard to the charges against Wambold does not alter this conclusion. The Court therefore finds that the State has articulated a *prima facie* case for the application of the deliberative process privilege to the Review Sheets in this case.

> ii. Whether, on Balance, the Review Sheets Are Entitled to Deliberative Process Protection

As noted earlier, the deliberative process privilege is not an absolute one. Even once it has been found to apply, a party opposing the privilege is entitled to an opportunity to overcome the privilege by showing sufficient need. The Court must balance the competing interests, following the guidance of the Third Circuit Court of Appeals, which instructs it to consider at least the following: (1) the relevance of the evidence sought to be protected; (2) the availability of other evidence; (3) the seriousness of the litigation; (4) the role of the government in the litigation; and (5) the potential for inhibited candor by government employees resulting from such disclosure. *Redland*, 55 F.3d at 854 (quoting *First Eastern Corp. v. Mainwaring*, 21 F.3d 465, 468 n. 5 (D.C. Cir. 1994)).

The NJSP argues that the Review Sheets have no evidentiary significance because the commenting officers performed no separate investigation, instead relying on the investigating officer's report and recommendation. NJSP Brief at p. 7. [Docket Entry No. 75-1]. As such, says the NJSP, the Review Sheets have no additional facts and constitute mere "lay opinions," carrying no evidential weight under Fed. R. Evid. 701. NJSP Brief at pp. 10-12.

In contrast, Wambold argues that the Review Sheets are "highly relevant to the within matter because the State's only way to avoid providing Wambold with a defense in the Bayliss litigation is to assert that Wambold engaged in misconduct. Wambold Brief at 10. Wambold goes on to argue in great detail about the State's initial agreement to defend and indemnify him and its later decision to withdraw that defense and indemnification. Thus, much of the argument centers on whether the State is "liable to pay for Wambold's defense fees and costs," and the conflict arising from the State's failure to do so. *Id.* at pp. 10-12.

In so arguing, Wambold mistakes what is currently at issue in this case. As currently plead, the sole issue before this Court is whether Bayliss has asserted a cognizable excessive force claim against the various Defendants. While Wambold contends that the Review Sheets are relevant to *his* claim against the NJSP, that claim is not presently before the Court. It was the subject of a motion for leave to amend, which was hotly contested given that the same claim is the subject of a pending state proceeding. That motion was terminated in light of the settlement between Bayliss and all Defendants and its impact on this Court's jurisdiction. While Wambold has indicated that he may still seek to renew and rebrief his Motion to Amend, the claims he would assert through that amendment are not currently part of the case nor is there any certainty that they ever will be. Accordingly, they cannot factor into the Court's consideration of relevance with regard to the Review Sheets.

Indeed, the Court finds that the Review Sheets have no relevance to the issues raised in the Bayliss Complaint, *i.e.*, whether or not Bayliss can recover on his claims of excessive force. Because the Review Sheets are not relevant, the Court finds that the remaining factors outlined by the Third Circuit in *Redland* weigh in favor of the return of the Review Sheets to the NJSP. The State has made a strong argument as to the harm that it would suffer if these internal

deliberative documents were released, particularly with regard to the chilling effect on the candor of commenting officers if they knew their opinions would be made public, whereas there has been no showing that these documents are even relevant to the issues in this case.

For the reasons set forth above, the Court finds that the deliberative process privilege applies to the Review Sheets in this case. The Court next considers whether the Review Sheets should be returned to the State in light of the traditional three-prong test set forth in Rule 502(b).

> B. Whether Disclosure of the Review Sheets Constitutes a Waiver of the Deliberative Process Privilege

The submissions reflect considerable confusion as to how the Review Sheets were originally released. The NJSP speculates that they were inadvertently provided to a different trooper undergoing disciplinary action in an unrelated matter. Jones Cert. ¶7. According to Wambold's counsel, the Review Sheets were attached to an email sent to an attorney representing another trooper in an unrelated matter. Certification of Charles J. Sciarra, Esq. ("Sciarra Cert.") ¶13.[1] [Docket Entry No. 83-2]. Vincent J. Nuzzi, Esq., who represents Juckett with regard to disciplinary charges filed against him, also put in a certification [Docket Entry No. 75-2], in which he discusses his efforts to obtain certain records relating to his client and the fact that those documents may have been inadvertently forwarded to another attorney, who then sent them to Christopher Burgos, president of the New Jersey State Troopers Fraternal Association. *Id.* ¶8.

---

[1] The Sciarra Certification is attached as an exhibit to the Certification of Matthew R. Curran in this matter, but is encaptioned as having been submitted in the action "*I/M/O Request for Defense and Indemnification, Bayliss v. New Jersey State Police, et al.*, Docket No. 11-cv-0890," in the Superior Court of New Jersey, Appellate Division, Docket No. A-6043-11T4.

While it remains unclear how the documents made it from the NJSP into Wambold's possession, one thing is clear: the disclosure was without authorization and is the subject of an investigation being conducted by the OPS. Jones Cert. ¶7. It was also a violation of the rules and regulations of the NJSP, and is a disciplinary offense. *Id.* The Court is therefore satisfied that the NJSP disclosure was inadvertent.

Wambold claims that the NJSP failed to take reasonable steps to prevent the disclosure, including failing to mark the Review Sheets with a confidential designation. Based on their treatment within the NJSP, however, the Review Sheets do not appear to be a class of documents ever intended to be released outside the department. As such, they would not necessarily be marked as confidential unless and until there was the intention to produce them. Indeed, as noted above, dissemination is considered a violation of the rules and regulations that govern the State Police, and is an offense that could lead to discipline. Jones Cert. ¶9. In such a case, it is credible that marking them as confidential may have seemed redundant given their usage and the regulatory strictures already in place. Based on the information in the record, the Court finds that the State took reasonable measures to ensure the confidentiality of the Review Sheets.

Wambold further contends that the NJSP delayed by failing to file its Clawback Motion until approximately ten weeks after the Review Sheets were inadvertently disclosed. Wambold, however, ignores that when counsel referenced the Review Sheets in his proposed amended pleading, the NJSP responded shortly thereafter, asserting that the documents were privileged and requesting their return. Sciarra Cert. ¶16. Wambold, through his counsel, refused to return the Review Sheets, and "implored them to file an application." *Id.* The issue was then addressed several times during case management conferences and the undersigned instructed the NJSP and Wambold to engage in the meet and confer process to see if they could resolve their dispute with

regard to the Review Sheets. When that failed, the undersigned set a schedule for the filing of a motion, which the State followed.

Under the circumstances and given the NJSP's prompt demand for the return of the documents, as well as its compliance with the instructions of the undersigned's first to attempt to resolve the issue and then to file its motion for the return of the documents, the Court finds that the NJSP took reasonable steps to procure the return of the Review Sheets.

IV. CONCLUSION

Accordingly, this Court finds that the Review Sheets are protected by the deliberative process privilege. The Court also finds that the privilege has not been waived, and the Review Sheets should therefore be returned to the State, along with an identification of any individuals to whom the Review Sheets have been disseminated.

For the foregoing reasons, and for good cause shown,

**IT IS** on this **20th** day of **September, 2013**,

**ORDERED** that the NJSP's Motion for Return of Documents [Docket Entry No. 75] is **GRANTED** and Wambold is hereby ordered to return the Review Sheets to counsel for the NJSP and to identify any individuals to whom the Review Sheets were disseminated within 10 days of entry of this Order.

**LOIS H. GOODMAN**
**United States Magistrate Judge**