NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAMES BAYLISS, | CIVIL ACTION NO. 11-890 (MLC) |
| Plaintiff, | **MEMORANDUM OPINION** |
| v. | |
| NEW JERSEY STATE POLICE, et al., | |
| Defendants. | |

**THE DEFENDANT** Trooper Richard J. Wambold, Jr., appeals from two orders of the Magistrate Judge, entered September 20, 2013 ("September 2013 Order") and December 9, 2013 ("December 2013 Order"), respectively. (See dkt. entry no. 98, 9-20-13 Mag. Judge Op. & Order; dkt. entry no. 112, 12-9-13 Mag. Judge Order; dkt. entry no. 115, Notice of Appeal.) The Court will affirm the September 2013 Order and the December 2013 Order.

**THE PLAINTIFF**, James Bayliss, brought this action to recover damages under 42 U.S.C. § 1983 related to his arrest by New Jersey state troopers. (See dkt. entry no. 48, 3d Am. Compl.) The defendants are listed as: New Jersey State Police ("NJSP"); Wambold; and Trooper Keith Juckett. (Id.)

**WAMBOLD** moved before the Magistrate Judge in December 2012 for leave to: (1) amend his answer; and (2) file counterclaims, cross-claims, and a third-party complaint against NJSP and the Office of the Attorney General of New Jersey ("NJOAG"). (See

dkt. entry no. 59.)  Wambold argued in support that: (1) NJSP had "charged . . . Wambold with violations of [NJSP]'s rules and regulations arising out of the . . . arrest of Bayliss including allegations that Wambold used excessive force"; (2) the NJOAG has refused to defend and indemnify him as to the claims brought by Bayliss, thereby forcing him to initiate state proceedings to compel NJOAG to reverse that refusal; and (3) he sought to allege that NJSP and NJOAG violated, <u>inter alia</u>, his procedural due process rights in violation of 42 U.S.C. § 1983 and "pursuant to N.J.S.A. 53:1-33 (the Forty-Five Day Rule)".  (Dkt. entry no. 59-1, Wambold Br. at 2-3, 12.)  Separate state proceedings concerning NJOAG's refusal to defend and indemnify Wambold and the disciplinary charges against Wambold appear to be ongoing.  (<u>See</u> dkt. entry no. 68, NJSP Letter at 1-2.; dkt. entry no. 82, NJSP Br. at 2, 5, 13-14; dkt. entry no. 83-2, Wambold Certification filed in New Jersey Appellate Division (concerning request for defense and indemnification); dkt. entry no. 104, Wambold Letter at 2 (referring to his "State Court matters"); dkt. entry no. 108, Wambold Br. at 3-4 (same); dkt. entry no. 115-1, Wambold Br. at 24 (suggesting ramifications if Wambold "were . . . found to be guilty of administrative charges related to the Bayliss arrest").)

   **TWO MONTHS AFTER** Wambold moved to amend, and while that motion was still pending, the State Troopers Fraternal Association of N.J., Inc. ("STFA") brought a separate action in federal court ("STFA Action") against the State of New Jersey and the NJSP Superintendent seeking to enjoin them from investigating or disciplining a separate trooper for disclosing confidential documents — i.e., a "Supervisory Review Sheet"

drafted by the NJSP concerning its investigation of the conduct of Juckett and Wambold when arresting Bayliss — to counsel for Juckett and Wambold. See D.N.J. No. 13-1065, dkt. entry no. 37, 12-11-13 Mem. & Order.

**NJSP** separately moved before the Magistrate Judge in March 2013 to "compel[] the return of documents inadvertently produced, and an identification of all those to whom the documents at issue were disseminated (the 'Clawback Motion')". (9-20-13 Mag. Judge Op. & Order at 1; see dkt. entry no. 75, NJSP Mot.)

**WHILE** Wambold's motion and NJSP's Clawback Motion were still pending, NJSP advised the Magistrate Judge that "we have settled this matter between the Plaintiff and all defendants." (Dkt. entry no. 90, NJSP Letter at 1.) The plaintiff also advised the Magistrate Judge "that this matter has been settled". (Dkt. entry no. 91, 8-21-13 Pl. Letter at 1.) Wambold further advised that "it appears that the State reached a monetary settlement with Plaintiff for which, based upon a memorandum [counsel is] in receipt of today, releases . . . Wambold". (Dkt. entry no. 92, 8-21-13 Wambold Letter at 1; see also dkt. entry no. 105, 10-21-13 Juckett Letter at 1 (stating "settlement check was delivered to counsel for the plaintiff", and "no further action needs to be taken with respect to the consummation of the settlement between plaintiff and defendants regarding plaintiff's claims", and thus "[t]he action filed by plaintiff against all defendants should be marked dismissed with prejudice").)

**THE MAGISTRATE JUDGE** thus terminated Wambold's motion to amend in August 2013. (See dkt. entry no. 93, 8-29-13 Order.) The Court will now quote from the

Magistrate Judge's thorough discussion of NJSP's Clawback Motion.  In the September 2013 Order, the Magistrate Judge granted the Clawback Motion, and ordered Wambold to return the documents at issue to NJSP and "to identify any individuals to whom the [documents] were disseminated."  (9-20-13 Mag. Judge Op. & Order at 15.)

> . . . NJSP raised the fact that the proposed [third] amended [complaint] contained references and quotes from confidential documents that it had not produced, referred to as the State Police Review Sheets (the "Review Sheets"). There was discussion as to how the documents had come into the possession of Wambold's counsel.  The undersigned instructed counsel to have further discussion on the issue in an effort to reach a resolution with regard to the use or return of those documents.  In the interim, the parties were instructed not to further disseminate the documents at issue.
>
> On November 7, 2012, Bayliss filed the Third Amended Complaint.  Shortly thereafter, the Court conducted a status conference on November 19, 2012. Because the Third Amended Complaint appeared to contain information from the Review Sheets, as quoted in the proposed amendment Wambold's counsel had circulated earlier, the Third Amended Complaint was placed under temporary seal.  In the Order dated November 27, 2012, counsel were instructed to "meet and confer regarding the confidentiality issues arising from the amended answer and determine how to address these issues prior to the amended answer being electronically filed."
>
> . . .
>
> The issue before the Court is whether the Review Sheets must be returned to the State based upon an inadvertent production of documents protected by the deliberative process privilege.  Fed. R. Civ. P. 26(b)(5)(B) provides in relevant part:
>
>> Information Produced.  If information produced in discovery is subject to a claim of privilege . . . the party making the claim may notify any party that received the information of the claim and the basis for it.  After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the

4

information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The producing party must preserve the information until the claim is resolved.

In determining whether documents that have been inadvertently produced must be returned, courts utilize a two-step process: first, the court must determine whether the documents at issue are in fact privileged. See Peterson v. Bernardi, 262 F.R.D. 424, 427 (D.N.J. 2009). If the documents are found to be privileged, the court must then decide whether the producing party waived that privilege. Id.

Fed. R. Evid. 502(b) governs such waiver in a federal proceeding if the documents are the subject of the attorney-client privilege or work product doctrine. The rule does not, however, specifically reference the deliberative process privilege. At least one other federal court has, nevertheless, looked to Rule 502 for guidance in determining the standard for the return of inadvertently produced documents protected by the deliberative process privilege. Sikorsky Aircraft Corp. v. United States, 106 Fed. Cl. 571, 582-83. (Fed. Cl. 2012) (quoting Tigue v. United States Dep't of Justice, 312 F.3d 70, 76 (2d Cir. 2002) (noting that the deliberative process privilege is a "sub-species of work-product privilege")). Because clear parallels exist between the policies sought to be fostered by the qualified privileges afforded attorney work-product and the deliberative process, this Court will also look to Rule 502 for guidance.

Under Rule 502, once it has been established that the documents at issue are privileged, the party seeking their return must satisfy the three prongs of Rule 502(b) to avoid a waiver: (1) the disclosure was in fact inadvertent; (2) the party took reasonable steps to protect the confidential information from disclosure; and (3) once the disclosure took place, the holder of the privilege acted promptly to secure the return of the documents.

In this case, the threshold issue of whether the documents at issue are confidential depends upon the application of the deliberative process privilege. The deliberative process privilege is the most frequently invoked form of executive privilege. In re Sealed Case, 121 F.3d 729, 737 (D.C. Cir. 1997).

The purpose of the privilege is to protect the quality of government decisionmaking by "prevent[ing] injury to the quality of agency decisions which could result from premature or indiscriminate disclosure" of "deliberations comprising part of a process by which government decisions and policies are formulated."  Resident Advisory Board v. Rizzo, 97 F.R.D. 749, 751 (E.D. Pa. 1983); see also National Labor Relations Board v. Sears, Roebuck & Co. ("NLRB"), 421 U.S. 132, 150 (1975); Conoco Inc. v. United States Dep't of Justice, 687 F.2d 724, 727 (3d Cir. 1982).  The privilege recognizes "that were agencies forced to operate in a fishbowl, the frank exchange of ideas and opinions would cease and the quality of administrative decisions would consequently suffer."  First Eastern Corp. v. Mainwaring, 21 F.3d 465, 468 (D.C. Cir. 1994) (quotations and internal ellipses omitted).

That said, "the deliberative process privilege, like other executive privileges, should be narrowly construed."  Redland Soccer Club, Inc. v. Dep't of Army of U.S., 55 F.3d 827, 856 (3d Cir. 1995) (quoting Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 868 (D.C. Cir. 1980)).  Because the privilege does not protect all communications made by government officials, the court must initially determine whether the material the government seeks to protect comprises part of a process by which a government agency formed a decision or policy.  NLRB, 421 U.S. at 150.  The initial burden of establishing whether the deliberative process privilege applies is on the government.  Redland, 55 F.3d at 854.

Accordingly, in the first instance, the court must determine whether the government has established a prima facie case that the deliberative process privilege applies.  United States v. Ernstoff, 183 F.R.D. 148, 152 (D.N.J. 1998).  To do so, the government must initially show that the material sought to be protected is pre-decisional and deliberative.  Abdelfattah v. United States Dep't of Homeland Sec., 488 F.3d 178, 183 (3d Cir. 2007).  In order to be pre-decisional, the document in question "must concern an anticipated agency decision and have been generated prior to the actual decision being reached; it cannot involve a communication concerning the decision made after the decision has already been adopted."  United States v. Pechiney Plastics Packaging, Inc., No. 09-5692, 2013 WL 1163514, at *13 (D.N.J. March 19, 2013).  Further, to be deliberative, a document must reflect "advisory

opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." NLRB, 421 U.S. at 151-52. In other words, the material must "reflect[] the give and take of the consultative process." New Jersey v. RPI Energy Mid-Atlantic Power Holdings, LLC, No. 07-5298, 2013 WL 272763, at *1 (E.D. Pa. Jan. 24, 2013) (citing Rizzo, 97 F.R.D. at 753). In addition, to the extent that the documents reflect "personal opinions of the writer rather than the policy of the agency," such documents are protected by the privilege since disclosure "would inaccurately reflect or prematurely disclose the views of the agency, suggesting as agency position that which is as yet only a personal position." Coastal States Gas Corp.[, 617 F.2d at 866].

Because the privilege extends only to deliberative documents, it does not typically apply to documents reflecting "compiled factual material or purely factual material contained in deliberative memoranda and severable from its context." Environmental Protection Agency v. Mink, 410 U.S. 73, 88 (1973). However, "factual information that itself reveals the deliberative process and cannot be severed from the deliberative context is protected." In re U.S., 321 Fed. Appx. 953, 959 (Fed. Cir. 2009). In deciding whether certain material is deliberative, "[c]ourts focus less on the nature of the materials sought and more on the effect of the materials' release: the key question in [such] cases became whether the disclosure of materials would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." Id. (quoting Dudman Commc'ns v. Dep't of the Air Force, 815 F.2d 1565, 1568 (D.C. Cir.1987)).

Once the government satisfies these threshold requirements, the deliberative process privilege is applicable. The court's inquiry, however, does not end there because the privilege is not absolute. Redland, 55 F.3d at 854. Instead, once the agency demonstrates that the privilege applies, the party seeking discovery has the opportunity to make a showing of sufficient need for the otherwise privileged material. Rizzo, 97 F.R.D. at 753. In that regard, the court must balance the need for the documents against the reasons for confidentiality asserted by the government. In conducting this balancing test, a court should consider: (1) the relevance of the evidence sought; (2) the

availability of other evidence; (3) the seriousness of the litigation and issues involved; (4) the role of the government in the litigation; and (5) the potential for inhibited candor by government employees resulting from such disclosure. Redland, 55 F.3d at 854.

. . .

The State contends that the Review Sheets are subject to the protections of the deliberative process privilege. In so arguing, the State relies in large part on the Certification of Major David C. Jones, the Commanding Officer of the NJSP Office of Professional Standards (the "OPS"). In his Certification, Major Jones sets forth in detail the process by which the OPS conducts internal investigations of alleged misconduct. As Major Jones explains, an investigation into alleged misconduct by a trooper is performed by an investigating officer. The investigating officer prepares a summary of the allegations and the conclusions reached. The investigating officer's completed investigation, the summary of that investigation, and the Review Sheets are forwarded through the OPS chain of command for their independent review by supervising members of Major Jones's command staff. The supervising command staff members do not conduct their own independent factual investigations. Instead, the command staff members complete the Review Sheets, offering their opinions on the investigation. After receipt of the investigation, the summary, and the completed Review Sheets, Major Jones formulates a recommendation for the Superintendent of the [NJSP]. The Superintendent renders a decision with respect to proposed disciplinary action.

Major Jones asserts that he "rel[ies] heavily upon the candid evaluations of [his] staff before submitting [his] recommendation to the Superintendent." Disclosure of Review Sheets "would necessarily have a chilling effect on the candor of the reviewing officers," insofar as "an officer might be unwilling to share a 'gut feeling' or some other misgiving, if he knows he might be called upon to justify [it] in a deposition or trial." Major Jones avers that "deny[ing] the Superintendent the free flow of advice from his experienced supervisory personnel undermines the public interest, would unreasonably and unnecessarily restrict the orderly functioning of the NJSP and negatively affect the administration of the trooper disciplinary system." Major Jones also asserts that the disclosure of the Review Sheets in this case is being

investigated by OPS and that it was contrary to the rules and regulations of the NJSP, which prohibit unauthorized disclosure or dissemination of non-public information received or acquired by virtue of members' official duties. Indeed, such disclosure is a disciplinary offense.

The State has asserted, through Major Jones as the head of OPS, a formal claim of privilege over a specific group of documents: the Review Sheets prepared within that department as part of the investigation into Wambold's alleged use of excessive force with respect to Plaintiff. Major Jones's Certification has also set forth a harm to the public interest—a chilling of the candor he relies upon from his reviewing officers and the subsequent deprivation of advice to the Superintendent—that would occur should the Review Sheets not be returned.

The State also argues that the Review Sheets are both pre-decisional and deliberative. With respect to the pre-decisional prong, the State has shown that the Review Sheets are prepared by senior members of OPS command staff and forwarded to the head of OPS for consideration prior to his recommendation to the Superintendent. With respect to the deliberative prong, the State has likewise shown that the Review Sheets consist of commentary provided by individual OPS command staff members to assist the head of OPS in his efforts to advise the Superintendent. The contents of the Review Sheets therefore seem to fall squarely within the sort of interior, advisory communications contemplated by the deliberative process privilege case law.

Wambold argues in the first instance that the Review Sheets cannot be privileged because the State actually agreed to represent Wambold in defense of the action brought by Bayliss. Essentially, Wambold contends that the Review Sheets are part of the State's file with regard to that representation and therefore should have been turned over to new counsel when the State withdrew from representation.

Wambold further contends that the Review Sheets are neither pre-decisional nor deliberative. He points out that the Review Sheets were dated before the first NJSP decision, in which it was decided to defend and indemnify Wambold, but that the NJSP later changed its mind, finding that Wambold had in fact engaged in the use of excessive force. Thus, Wambold contends, there were two final decisions made by the NJSP.

As a preliminary matter, the Court finds it is reasonable to expect that making the Review Sheets public would discourage OPS command staff members from offering their candid assessment of future cases, to the detriment of its investigations. Furthermore, the Court finds that a distinction must be drawn between the State's role in investigating the allegations of wrongdoing, which was done by the NJSP OPS, and the prior representation of Wambold by the New Jersey Office of the Attorney General. That the Attorney General's office once represented Wambold in this matter does not mean that otherwise confidential documents of the NJSP OPS are no longer privileged and must be turned over.

In addition, insofar as the Review Sheets precede both the OPS recommendation and the Superintendent's decision, the Review Sheets are pre-decisional. The fact that the NJSP changed its position with regard to the charges against Wambold does not alter this conclusion. The Court therefore finds that the State has articulated a prima facie case for the application of the deliberative process privilege to the Review Sheets in this case.

. . .

[T]he deliberative process privilege is not an absolute one. Even once it has been found to apply, a party opposing the privilege is entitled to an opportunity to overcome the privilege by showing sufficient need. The Court must balance the competing interests [and] consider at least the following: (1) the relevance of the evidence sought to be protected; (2) the availability of other evidence; (3) the seriousness of the litigation; (4) the role of the government in the litigation; and (5) the potential for inhibited candor by government employees resulting from such disclosure. Redland, 55 F.3d at 854 (quoting First Eastern Corp. v. Mainwaring, 21 F.3d 465, 468 n.5 (D.C. Cir. 1994)).

The NJSP argues that the Review Sheets have no evidentiary significance because the commenting officers performed no separate investigation, instead relying on the investigating officer's report and recommendation. As such, says the NJSP, the Review Sheets have no additional facts and constitute mere "lay opinions," carrying no evidential weight under Fed. R. Evid. 701.

In contrast, Wambold argues that the Review Sheets are "highly relevant to the within matter because the State's only way to avoid providing Wambold with

a defense in the Bayliss litigation is to assert that Wambold engaged in misconduct." Wambold goes on to argue in great detail about the State's initial agreement to defend and indemnify him and its later decision to withdraw that defense and indemnification. Thus, much of the argument centers on whether the State is "liable to pay for Wambold's defense fees and costs," and the conflict arising from the State's failure to do so.

In so arguing, Wambold mistakes what is currently at issue in this case. As currently [pled], the sole issue before this Court is whether Bayliss has asserted a cognizable excessive force claim against the various Defendants. While Wambold contends that the Review Sheets are relevant to his claim against the NJSP, that claim is not [currently] before the Court. It was the subject of a motion for leave to amend, which was hotly contested given that the same claim is the subject of a pending state proceeding. That motion was terminated in light of the settlement between Bayliss and all Defendants and its impact on this Court's jurisdiction. While Wambold has indicated that he may still seek to renew and rebrief his Motion to Amend, the claims he would assert through that amendment are not currently part of the case nor is there any certainty that they ever will be. Accordingly, they cannot factor into the Court's consideration of relevance with regard to the Review Sheets.

Indeed, the Court finds that the Review Sheets have no relevance to the issues raised in the Bayliss Complaint, i.e., whether or not Bayliss can recover on his claims of excessive force. Because the Review Sheets are not relevant, the Court finds that the remaining factors outlined by the Third Circuit in <u>Redland</u> weigh in favor of the return of the Review Sheets to the NJSP. The State has made a strong argument as to the harm that it would suffer if these internal deliberative documents were released, particularly with regard to the chilling effect on the candor of commenting officers if they knew their opinions would be made public, whereas there has been no showing that these documents are even relevant to the issues in this case.

For the reasons set forth above, the Court finds that the deliberative process privilege applies to the Review Sheets in this case. The Court next considers whether the Review Sheets should be returned to the State in light of the traditional three-prong test set forth in Rule 502(b).

. . .

The submissions reflect considerable confusion as to how the Review Sheets were originally released. The NJSP speculates that they were inadvertently provided to a different trooper undergoing disciplinary action in an unrelated matter. According to Wambold's counsel, the Review Sheets were attached to an email sent to an attorney representing another trooper in an unrelated matter. Vincent J. Nuzzi, Esq., who represents Juckett with regard to disciplinary charges filed against him, also put in a certification, in which he discusses his efforts to obtain certain records relating to his client and the fact that those documents may have been inadvertently forwarded to another attorney, who then sent them to Christopher Burgos, president of the New Jersey State Troopers Fraternal Association.

While it remains unclear how the documents made it from the NJSP into Wambold's possession, one thing is clear: the disclosure was without authorization and is the subject of an investigation being conducted by the OPS. It was also a violation of the rules and regulations of the NJSP, and is a disciplinary offense. The Court is therefore satisfied that the NJSP disclosure was inadvertent.

Wambold claims that the NJSP failed to take reasonable steps to prevent the disclosure, including failing to mark the Review Sheets with a confidential designation. Based on their treatment within the NJSP, however, the Review Sheets do not appear to be a class of documents ever intended to be released outside the department. As such, they would not necessarily be marked as confidential unless and until there was the intention to produce them. Indeed, as noted above, dissemination is considered a violation of the rules and regulations that govern the State Police, and is an offense that could lead to discipline. In such a case, it is credible that marking them as confidential may have seemed redundant given their usage and the regulatory strictures already in place. Based on the information in the record, the Court finds that the State took reasonable measures to ensure the confidentiality of the Review Sheets.

Wambold further contends that the NJSP delayed by failing to file its Clawback Motion until approximately ten weeks after the Review Sheets were inadvertently disclosed. Wambold, however, ignores that when counsel referenced the Review Sheets in his proposed amended pleading, the NJSP

> responded shortly thereafter, asserting that the documents were privileged and requesting their return.  Wambold, through his counsel, refused to return the Review Sheets, and "implored them to file an application."  The issue was then addressed several times during case management conferences and the undersigned instructed the NJSP and Wambold to engage in the meet and confer process to see if they could resolve their dispute with regard to the Review Sheets.  When that failed, the undersigned set a schedule for the filing of a motion, which the State followed.
>
> Under the circumstances and given the NJSP's prompt demand for the return of the documents, as well as its compliance with the instructions of the undersigned's first to attempt to resolve the issue and then to file its motion for the return of the documents, the Court finds that the NJSP took reasonable steps to procure the return of the Review Sheets.
>
> . . .
>
> Accordingly, this Court finds that the Review Sheets are protected by the deliberative process privilege.  The Court also finds that the privilege has not been waived, and the Review Sheets should therefore be returned to the State, along with an identification of any individuals to whom the Review Sheets have been disseminated.

(Id. at 2-15 (footnote and citations to record omitted).)  Wambold timely moved for reconsideration of the September 2013 Order on October 4, 2013.  (See dkt. entry no. 101.)

**ON DECEMBER 11, 2013,** the Court overseeing the STFA Action declined to issue an injunction.  See D.N.J. No. 13-1065, dkt. entry no. 37, 12-11-13 Mem. & Order.  STFA appealed.  See 3d Cir. No. 13-4822.  That decision has now been affirmed.  See State Troopers Fraternal Ass'n of N.J. v. New Jersey, No. 13-4822, slip op. (3d Cir. Sept. 15, 2014).

**THE MAGISTRATE JUDGE** denied Wambold's motion to reconsider in the December 2013 Order, stating:

> First, Wambold contends that the Court failed to consider the Certification of Christopher Burgos, the President of the State Troopers Fraternal Association of New Jersey, Inc. (the "Burgos Certification"). Wambold points out that the Court failed to mention the Burgos Certification in the September 20 Order, despite [it] having been submitted. To the extent the Court's failure to mention the Burgos Certification in its September 20 Order has caused any confusion, the Court hereby clarifies by acknowledging that the Burgos Certification was received as part of Wambold's opposition to the Clawback Motion, and that it was in fact considered by the Court in reaching its determination. Accordingly, the Motion for Reconsideration based upon the Burgos Certification is denied.
>
> Next, Wambold states that he seeks clarification of his obligations under the September 20 Order. Particularly, Wambold asks this Court to clarify that the September 20 Order does not have a preclusive effect on other litigation in which the State and Wambold are involved. This Court tried to be very clear in that Order that the decision was limited to the matters before it, particularly with regard to its analysis of the deliberative process privilege. That analysis was necessarily limited to the issues before the Court at that time. This Court cannot opine as to what another court, in another circumstance and with different legal and factual issues, might do, nor should it. The parties are at liberty to make their arguments to those tribunals.
>
> Nonetheless, the import of the September 20 Order must remain clear: it is Wambold's obligation under that Order to return all copies he has in his possession, custody or control to the State, and to further advise the State of any persons or entities to which the documents have been disseminated. If those persons or entities include other courts, that must be disclosed. If copies that have been disseminated remain within Wambold's possession, custody or control, they must be retrieved and returned.

(12-9-13 Mag. Judge Order at 2-3.)

14

**WAMBOLD** timely appealed to this Court on December 23, 2013, pursuant to Federal Rule of Civil Procedure 72 from "the Opinion and Order denying [his] motion for reconsideration of the Court's September 20, 2013 Opinion and Order granting [NJSP's] motion seeking the return of documents produced by the State and an identification of all those to whom the documents at issue were produced", i.e., the September 2013 Order and the December 2013 Order.  (Notice of Appeal at 2.)  See L.Civ.R. 72.1(c).  He does not seek review of the August 2013 termination of the motion to amend.

**THE CLAWBACK MOTION** did not address a dispositive matter, and thus was within the purview of the Magistrate Judge.  See 28 U.S.C. § 636(b)(1)(A).  When an appeal "seeks review of a matter within the purview of the Magistrate Judge, such as a discovery dispute, an even more deferential standard, the 'abuse of discretion' standard, must be applied".  Salamone v. Carter's Retail, No. 09-5856, 2012 WL 821494, at *4 (D.N.J. Mar. 9, 2012).  In reviewing the Magistrate Judge's order in a non-dispositive matter, a district court may modify, vacate, or reverse the order only if the order was "clearly erroneous or contrary to law".  28 U.S.C. § 636(b)(1)(A); Cipollone v. Liggett Grp., 785 F.2d 1108, 1113 (3d Cir. 1986); see Jackson v. Chubb Corp., 45 Fed.Appx. 163, 166 n.7 (3d Cir. 2002) (stating district court may reverse Magistrate Judge's ruling on non-dispositive issues, e.g., discovery, only if ruling is clearly erroneous or contrary to law).  An order is clearly erroneous when, although there is evidence to support that finding, the reviewing court upon considering the entire evidence is left with the definite and firm conviction that a mistake has been committed.  See Kounelis v. Sherrer, 529

F.Supp.2d 503, 517-18 (D.N.J. 2008); Dome Petroleum Ltd. v. Emp'rs Mut. Liab. Ins. Co., 131 F.R.D. 63, 65 (D.N.J. 1990). An order is contrary to law if the Magistrate Judge misinterpreted or misapplied applicable law. See Gunter v. Ridgewood Energy Corp., 32 F.Supp.2d 162, 164 (D.N.J. 1998). The Court, pursuant to the clearly erroneous standard of review, will not reverse the Magistrate Judge's determination even if the Court might have decided the matter differently. See Wortman v. Beglin, No. 03-495, 2007 WL 2375057, at *2 (D.N.J. Aug. 16, 2007).

**THE COURT** resolves the appeal without oral argument. See L.Civ.R. 78.1(b). The Court has thoroughly reviewed the papers filed in support of, and in opposition to, the appeal. (See dkt. entry nos. 115, 117, & 118.) The Court concludes that: (1) the September 2013 Order and the December 2013 Order appear to have been decided in a rational exercise of the Magistrate Judge's discretion; and (2) the Magistrate Judge did not err, misinterpret, or misapply any applicable law in issuing those Orders. See Gunter, 32 F.Supp.2d at 164; see Wortman, 2007 WL 2375057, at *2. The Magistrate Judge correctly found that the deliberative-process privilege allowed NJSP to consider many potential outcomes and points of view before reaching an official final decision as to Wambold's conduct without fear of public scrutiny, and protected the process of debate and deliberation that would not otherwise occur if frank differences of opinion along the way were subject to disclosure. See Guidiville Rancheria of Cal. v. United States, No. 12-1326, 2013 WL 6571945, at *8 (N.D. Cal. Dec 13, 2013) (reversing Magistrate Judge's order denying return of documents inadvertently disclosed by government

agency). Cf. Amobi v. D.C. Dep't of Corrs., 262 F.R.D. 45, 54-55 (D.D.C. 2009) (denying return of documents inadvertently disclosed by government agency, as agency did not seek to rectify the error for at least 55 days and failed to take reasonable efforts to prevent disclosure). Indeed, NJSP sought the return of the documents promptly upon becoming aware of their disclosure. Therefore, the Court will affirm the September 2013 Order and the December 2013 Order.

**THE COURT** also intends to terminate and close this action in its entirety for several reasons. All of the pending claims have been settled. (See 8-21-13 Pl. Letter at 1; 8-21-13 Wambold Letter at 1; 10-21-13 Juckett Letter at 1.) There is no basis for the Court to endeavor to adjudicate Wambold's proposed counterclaims and cross-claims, even if they concern federal law. See Vaden v. Discover Bank, 556 U.S. 49, 60-61 (2009) (stating "[n]or can federal jurisdiction rest upon an actual or anticipated counterclaim", noting that the Supreme Court has "emphatically" stated that even a compulsory federal counterclaim does not give rise to jurisdiction); Barkwell v. Portfolio Recovery Assocs., No. 09-113, 2010 WL 2012149, at *1-3 (M.D. Ga. May 20, 2010) (finding no jurisdiction over remaining counterclaim where first-party action giving rise to jurisdiction settled, even though counterclaim asserted allegations under federal law).

**THE PROPOSED COUNTERCLAIMS AND CROSS-CLAIMS** asserted by Wambold are also barred by Younger abstention because related state proceedings are ongoing. A federal court must abstain from exercising jurisdiction, pursuant to the Younger abstention doctrine, when (1) related state proceedings are ongoing, (2)

17

important state interests are implicated, and (3) there is an adequate opportunity to raise federal claims in the state proceedings.  See Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 435 (1982); Younger v. Harris, 401 U.S. 37, 43-54 (1971).  The state proceedings here are "proceedings" under Younger.  See Zahl v. Harper, 282 F.3d 204, 209 (3d Cir. 2002); N.J.Ct.R. 2:2-3 (setting forth procedure for further state review); see also Ocean Grove Camp Meeting Ass'n v. Vespa-Papaleo, 339 Fed.Appx. 232, 237, 239 (3d Cir. 2009) (stating under Younger that proper forum for review of New Jersey state agency's final decision is New Jersey Appellate Division); W.K. v. N.J. Div. of Dev'l Disabilities, 974 F.Supp. 791, 794 (D.N.J. 1997) (stating proper forum for review of state agency's final decision is New Jersey Appellate Division, as for Younger purposes the administrative and appeals process is treated as a unitary system).  Also, disciplinary proceedings concerning police officers implicate important state interests under Younger.  See Terry v. Town of Morristown, No. 06-1788, 2007 WL 2085351, at *4 (D.N.J. July 17, 2007); Fontaine v. City of Chester, No. 85-2453, 1986 WL 9486, at *3 (E.D. Pa. Aug. 28, 1986).

      **TO THE EXTENT** that any of Wambold's proposed counterclaims and cross-claims seek to avoid or invalidate any orders issued by a New Jersey state court, they are barred.  The proper way to do so would be to seek review through the entire state appellate process, and then seek certiorari directly to the United States Supreme Court.  See D.C. Ct. of Apps. v. Feldman, 460 U.S. 462, 482 (1983); Rooker v. Fid. Trust Co., 263 U.S. 413, 414-16 (1923).  The Rooker-Feldman doctrine prohibits adjudication of a

18

claim where the relief requested would require a federal court to either determine whether a state court's decision is wrong or void that decision, and thus would prevent a state court from enforcing its orders.

**THE COURT**, in terminating this action, does not have the authority to bar Wambold — upon payment of the required fee — from attempting to bring a completely separate action asserting his claims in federal court.  In fact, the Court is at a loss to understand why Wambold would attempt to proceed under this particular civil action number, as the plaintiff's claims — including those asserted against him — have been settled.  But it also appears that several of his arguments raised in opposition to the Clawback Motion have now been addressed by the Third Circuit Court of Appeals in the STFA Action.  The Court offers no opinion as to whether a separate action brought by Wambold at this juncture would be terminated on the same grounds discussed here.

**THE COURT** will issue an appropriate order and judgment.

    s/Mary L. Cooper      
**MARY L. COOPER**
United States District Judge

Dated:  September 16, 2014